## Gonzales v New York City Hous. Auth.

2024 NY Slip Op 30499(U)

February 16, 2024

Supreme Court, New York County

Docket Number: Index No. 150664/2018

Judge: James d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    Hon. James E. d'Auguste                    PART 55

                                *Justice*

-----------------------------------------------------------------X

TOMAS FARFAN GONZALES,

                                Plaintiff,

                    - v -

NEW YORK CITY HOUSING AUTHORITY, CREW
CONTRACTING OF NJ INC, TDX CONSTRUCTION
CORPORATION,

                                Defendants.

-----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 150664/2018 |
| MOTION DATE | 09/24/2021, 09/10/2021, 10/27/2021, 11/04/2021 |
| MOTION SEQ. NO. | 003 004 007 008 |

## DECISION ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 003) 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 213, 215, 269, 273, 292, 296, 303, 304, 307, 308, 309, 310, 311, 321, 322, 323

were read on this motion to/for            SUMMARY JUDGMENT            .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 214, 270, 274, 282, 283, 284, 285, 286, 293, 297, 301, 302, 313, 314, 315, 316, 317, 318, 320, 329

were read on this motion to/for            SUMMARY JUDGMENT            .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 271, 287, 288, 289, 290, 294, 295, 305, 306, 319

were read on this motion to/for            SUMMARY JUDGMENT            .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 277, 278, 279, 291

were read on this motion to/for            DISMISS            .

Upon the foregoing documents, motion sequence numbers 003, 004, 007 and 008 are

hereby consolidated for disposition and resolved as follows.

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No.  003 004 007 008

Page 1 of 46

## PROCEDURAL BACKGROUND

Plaintiff Tomas Farfan Gonzalez seeks damages in this Labor Law action for personal injuries he allegedly sustained on August 10, 2017. Plaintiff was working atop a sidewalk shed (the "Sidewalk Shed") at a construction site located at and around 154 Broome Street, New York, New York (the "Premises"). Plaintiff stepped onto a wooden plank that broke causing him to fall to the ground approximately 12 feet below purportedly resulting in the injuries complained of in this action. At the time of the accident plaintiff was apparently employed by Crew Contracting of NJ Inc. ("Crew"), which was apparently hired by AAA Window & Door Corporation ("AAA"). The Premises was owned and controlled by the New York City Housing Authority ("NYCHA"). TDX Construction Corporation ("TDX") allegedly directed the overall construction work taking place at the Premises, although AAA was admittedly in charge of safety relating to the Side Shed.

In motion sequence 003, TDX moves for summary judgment, pursuant to CPLR 3212, dismissing all claims, crossclaims, and counterclaims together with a conditional grant of contractual indemnification on its second third-party claim against AAA.

In motion sequence 004, plaintiff moves for summary judgment, pursuant to CPLR 3212, on the issue of liability as against all defendants in this action. Plaintiff further moves, pursuant to CPLR 602, to consolidate this action with plaintiff's relating action against AAA (Index No. 155150/2020), and, upon consolidation, summary judgment on the issue of liability on his claims against AAA.

In motion sequence 007, NYCHA moves for summary judgment, pursuant to CPLR 3212, dismissing all claims, crossclaims, and counterclaims against it, together with contractual and common law indemnification on its third-party claims against TDX, AAA, and Crew.

150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 2 of 46

[* 2]

NYCHA also seeks summary judgment in its favor on its third-party breach of contract claim for failure to obtain insurance against AAA.

In motion sequence 008, Crew moves for summary judgment pursuant to CPLR 3212 dismissing all claims and crossclaims against it.

### *Plaintiff's 50-h Hearing*

Plaintiff appeared for a hearing pursuant to New York General Municipal Law § 50-h on October 17, 2017 (NYSCEF Doc. No. 188). He testified that at the time of the accident he believed that he was employed by AAA, rather than Crew, an entity he asserted to be unknown to him (Plaintiff's 50-h hearing tr at 17, 22, 23, 89). On the date of the accident, plaintiff was one of six employees working at the jobsite (*id.* at 29, 30, 41, 89). There were two employees directly in charge of his work: "Guadalupe" and Adolfo Garcia (*id.* at 28-30). At the time of the accident, plaintiff was wearing a harness and rope (*id.* at 33, 35). This was a personal harness, as his employer did not provide him with a harness (*id.* at 36). The harness rope was approximately one meter long and not secured to anything prior to the accident (*id.* at 34-35). While the other employees were also wearing harnesses, their harnesses were also not attached to anything (*id.* at 44-45). Plaintiff asserted that he was not directed to attach the harness to anything at the worksite on the day of the accident (*id.* at 45).

As for the Sidewalk Shed, plaintiff testified that it was assembled when he arrived at the worksite on the date of the accident (*id.* at 47). The Sidewalk Shed was comprised of a metal base and metal tubes, with wooden panels forming a "bridge" on top of the metal tubes (*id.* at 47, 107-108). Plaintiff was standing on the wooden panels at the time of the accident, which was located twelve to thirteen feet from the ground (*id.* at 43-44, 47). Plaintiff was instructed to clean up the Sidewalk Shed in preparation for dismantling it (*id.* at 49-51). Plaintiff was passing

150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 3 of 46

[* 3]

a piece of metal pipe to Guadalupe, who was standing under the Sidewalk Shed, when the wooden panel plaintiff stepped on "broke" causing Plaintiff to fall off the Sidewalk Shed (*id.* at 36-38, 57-59, 60-65, 79, 85).

*Plaintiff's Deposition Testimony*

Plaintiff appeared for depositions on October 24, 2019, and February 6, 2020 (NYSCEF Doc. No. 141, 187). In his deposition, plaintiff again testified that he believed he was working for AAA, but admitted uncertainty as to this stated belief (Plaintiff's tr. at 36-37, 52, 254). According to plaintiff, he first became aware of Crew when he received a check "with that name on it" a week after the accident (*id.* at 52 – 53, 253). Plaintiff did not know for whom Garcia or Guadalupe worked (*id.* at 55, 89). Plaintiff testified that he believed that AAA built the Sidewalk Shed because "there was a sign there with their name" (*id.* at 260). He did not know how long the Sidewalk Shed had been up before his accident (*id.* at 260-261). As asserted in his 50-h hearing, plaintiff testified that he was wearing a harness at the time of the accident, but that it was not attached to anything (*id.* at 77-80). Plaintiff testified that Guadalupe had previously instructed him to secure a harness whenever plaintiff was on a scaffold (Plaintiff tr. at 82-83).

*Deposition Testimony of Hitendra Patel, NYCHA employee*

Hitendra Patel[1] appeared for a deposition on September 3, 2020 (NYSCEF Doc. No. 144). At his deposition, H.A. Patel identified himself as a NYCHA project manager and provided information regarding this litigation (H.A. Patel tr. at 14). He identified NYCHA as the owners of the Premises at the time of the accident (H.A. Patel tr. at 20). He also testified that he never visited the worksite prior to the date of the accident and that no one employed by NYCHA

---

[1] As there are two individuals named Hitendra Patel that provided information related to this matter. The individual testifying for NYCHA will be identified as "H.A. Patel" (*e.g.*, NYSCEF Doc. No. 189), while the individual affiliated with TDX is identified as "H. Patel" (*e.g.*, NYSCEF Doc. No. 190).

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 4 of 46

[* 4]

was at the Premises at the time of the accident (*id.* at 19-20, 23). H.A. Patel testified that the Sidewalk Shed was installed in 2015, and that it was being disassembled on the date of the accident (*id.* at 111). He did not know if the Sidewalk Shed was ever damaged or displaced prior to the date of the accident (*id.* at 111). H.A. Patel testified that NYCHA had a contract with AAA wherein AAA would perform exterior restoration work for NYCHA housing developments (*id.* at 58-59). At his deposition, H.A. Patel was shown a copy of NYCHA's contract with AAA for exterior work on the Premises (the "Exterior Contract").

H.A. Patel testified that the Sidewalk Shed did not fall within the Exterior Contract, nor was it a part of the exterior restoration project that was later conducted at the Premises (*id.* at 90-91, 109-110). According to H.A. Patel there was a separate contract (the "Separate Contract"), not the Exterior Contract, that governed the Sidewalk Shed (*id.* at 90, 109). Referring to the Separate Contract, H.A. Patel testified that the Sidewalk Shed was only "for protection of pedestrians for the installing of this contract, and no facade work was assigned to AAA to do the facade repair work on this contract" (*id.* at 109). H.A. Patel testified that the Premises "had no construction activity" and that the Premises "had only [a] sidewalk shed to protect the pedestrian from unsafe facade condition" (*id.* at 90).

H.A. Patel testified that NYCHA had a contract with TDX, whereby NYCHA retained TDX as the construction manager over the work being performed at the Premises (the "NYCHA/TDX Contract", NYSCEF Doc. No. 134) (*id.* at 21-23, 31). He further testified that TDX's responsibilities included coordinating "field activity" and providing NYCHA with "daily reports" (Patel tr. at 22). These daily reports included "[i]f there was a number of people working, what area they are working on, [and], if there [were] any defect, citations of defective

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 5 of 46

work" (*id.* at 35, 37). TDX was required to upload these daily reports at least once a week (*id.* at 35-36). H.A.

H.A. Patel testified that TDX was not required to submit a site safety plan as "they are not doing actual construction work" (*id.* at 89).

H.A. Patel testified that H. Patel, a "field inspector" for TDX, was on the worksite on the date of the accident (*id.* at 23-24, 79). H.A. Patel further testified that TDX, as the construction manager, would enforce compliance based upon the NYCHA CSQ's citations (*id.* at 46). Patrick Yip was a "project manager" for TDX (*id.* at 79). H.A. Patel testified that NYCHA has a "compliance team" - the Construction Safety Compliance Team (the "NYCHA CSQ") - that conducts sporadic inspections of NYCHA projects (*id.* at 44, 65-66). The NYCHA CSQ is not permanently assigned to any specific projects but conducts sporadic inspections of NYCHA worksites looking for violations and issuing citations (*id.* at 44, 66, 78, 83-84). H.A. Patel further testified that Yip informed him of the accident in a phone call, and Yip submitted an accident report (*id.* at 80, 97-98).

### *Deposition Testimony of Hitendra Patel, superintendent for TDX*

H. Patel appeared for a deposition on September 9, 2020 (NYSCEF Doc. No. 143). During his deposition, H. Patel identified himself as being employed by TDX as a "superintendent" at the time of the accident (H. Patel tr. at 25). He testified that he was assigned to the Premises for one day for the purpose of taking down the Sidewalk Shed (*id.* at 13, 14, 36). H. Patel testified that on the date of the accident he was at the worksite from 8:00 a.m. to 4:30 p.m. (*id.* at 36, 37, 56). He was the only TDX employee present at the worksite on the date of the accident, and Crew workers were also present (*id.* at 129). The Sidewalk Shed was still in place when he arrived, and the workers had not yet begun to disassemble it (*id.* at 143)). He was

150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 6 of 46

[* 6]

on the other side of the worksite when Guadalupe informed him of plaintiff's accident (*id.* at 109-110). H. Patel both testified that he did not remember whether he observed plaintiff's accident and that he did not observe plaintiff's accident (*id.* at 104-105, 137).

During the deposition, he attested to responsibilities that were limited to "the daily reports, ongoing activities and sign-in sheet for the workers" (*id.* at 26). H. Patel claimed that he lacked authority to stop work at the Premises (*id.* 51-52). He was responsible "[j]ust for the man count, sign-in sheet, daily reports and [to] take photographs" (*id.* at 34). H. Patel testified that the "sign-in sheet" was from NYCHA and that he recorded "the weather, the temperature, man count and construction activity" (*id.* at 35-36). "[I]f something happened," H. Patel would also record it in the incident report (*id.* at 35-36). He further testified that he was required "to take pictures ongoing construction randomly" and that his responsibilities as superintendent did not include taking photos of defective conditions or equipment (*id.* at 48, 50).

Additionally, H. Patel testified that TDX monitored the progress of the contractor's work at the Premises (*id.* at 46). He further testified that TDX did not have the authority to make repairs to the Sidewalk Shed "[b]ecause we are just doing the daily activities and we are not doing the repair" (*id.* at 65-66). H. Patel did not know if TDX was required to conduct inspections of the Premises or if TDX was required to make sure that the contractors were acting pursuant to their contracts with NYCHA (*id.* at 43). H. Patel did not know who hired TDX to work at the Premises or if TDX was the construction manager (*id.* at 39-40). He could not provide any information about TDX's responsibilities under the NYCHA/TDX Contract (*id.* at 41).

Notably, H. Patel was shown at his deposition a five-page written statement dated November 10, 2017, which included his signature on every page (NYSCEF Doc. No. 200) (*id.* at

[* 7]

81-82, 85). He recognized the written statement and his signatures but could not recall giving the statement or signing it (*id.* at 80-91). Upon reviewing this written statement, H. Patel testified that he did not conduct any type of inspection on the morning of the accident (*id.* at 96). Further, although the written statement indicates that NYCHA was not involved with the removal of the Sidewalk Shed and that Crew and/or AAA were responsible for the periodic inspection of the Sidewalk Shed, H. Patel testified that he did not know if these assertions were true (*id.* 98-99). H. Patel also testified that he only became aware of Crew and AAA after the accident (*id.* at 93).

Finally, H. Patel was shown the daily construction report that he prepared dated August 10, 2017 (the "TDX Daily Construction Report", NYSCEF Doc. No. 202) (*id.* at 126). H. Patel indicated in the TDX Accident Report that the Department of Buildings and NYCHA CSQ had also visited the worksite on the date of the accident (*id.* at 129-131). He further testified that NYCHA CSQ came to the worksite after the accident (*id.* at 130).

### Deposition Testimony of Carlos Thomas, field investigator for Cardinal Claims Services

As a non-party witness, Carlos Thomas appeared for a deposition on March 22, 2021 (NYSCEF Doc. No. 193). He testified that he was a field investigator for Cardinal Claims Services at the time of the accident and that he investigated plaintiff's accident (Thomas tr. at 11-12). As part of this investigation, Thomas testified that he interviewed and took a statement from H. Patel (*id.* at 13). At his deposition, Thomas was shown the H. Patel Written Statement. Thomas testified that he prepared this written statement based on his interview with H. Patel (*id.* at 16, 28-29). Thomas further testified that some of the information in the written statement may also have come from his review of the file and not directly from H. Patel (*id.* at 21). But he specifically testified that the part of the written statement indicating that "[t]he related contract

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

Page 8 of 46

[* 8]

has been in force since 2014" came directly from his interview with H. Patel and not from the file (*id.* at 21-22). Despite some general equivocating on the source of information, Thomas affirmed, after reading the entire written statement, that its contents were based entirely upon what H. Patel told to him when being interviewed (*id.* at 32). Thomas also confirmed that H. Patel reviewed the document and signed the written statement in his presence (*id.* at 28).

### *H. Patel Affidavit, dated August 16, 2021*

H. Patel signed an affidavit (NYSCEF Doc. No. 149), wherein he asserts that he was not involved in the "project" located at the Premises at any time prior to the date of the accident. He further states that he has no knowledge of any contracts relative to the "project," nor did he inspect the Sidewalk Shed at any time prior to the accident. Finally, he represents that although he recalls meeting with a NYCHA representative to discuss the accident, he does not recall reading nor signing the H. Patel Written Statement.

### *Ray Leu, senior project manager for TDX, Affidavit dated August 23, 2021*

Ray Leu, a senior manager for TDX, prepared an affidavit (NYSCEF Doc. No. 150) wherein he states that he was the senior project manager assigned to oversee the "project" at the Premises in and around 2017. He states that the "project" had "not… reached the construction phase" prior to plaintiff's accident and that "[n]o Local Law 11 work was performed at any time before August 10, 2017." The only work performed prior to the accident was the erection of the Sidewalk Shed. Leu further states that TDX was not responsible for the maintenance nor inspection of the Sidewalk Shed (from the time it was erected to the time it was dismantled). AAA erected the Sidewalk Shed and was responsible for maintaining and inspecting it pursuant to its contract with NYCHA.

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

**Page 9 of 46**

[* 9]

According to Leu, NYCHA informed TDX that AAA was directed to remove the Sidewalk Shed. As such, TDX assigned H. Patel to oversee the work. Leu states that H. Patel's sole functions on the date of the accident were to "record the number of men working that day on a sign-in sheet, to create a daily report, to take photos [of] the work's progress, and record any incidents/accidents that took place" (*id.* at ¶ 8). If H. Patel were to discover any unsafe condition or action, he was "to inform the foreman or superintendent of that contractor and to also inform the general superintendent on that project" (*id.* at ¶ 9). Leu claims that H. Patel did not have the authority to stop work on any project independently and that TDX did not have any authority to either direct or control the work of AAA and/or AAA's subcontractors.

### *Deposition Testimony of Syed Ahmed, owner of Crew*

Syed Ahmed appeared for a deposition on May 4, 2021 (NYSCEF Doc. No. 145). He identified himself as the owner of Crew, a commercial construction company, at the time of the accident (Ahmed tr. at 10). He also testified that Crew worked as a subcontractor for AAA on multiple projects, and that its work was limited to the installation and dismantling of sidewalk sheds (*id.* at 11, 14-20). Ahmed did not recall signing any contracts with AAA as to the erection of sidewalk sheds at NYCHA properties (*id.* at 50). Ahmed testified that AAA and Crew shared the same building, and that employees of AAA "can just literally walk into our office" and assign Crew to a job (*id.* at 51-52). AAA would often send Crew to work on projects (*id.* at 51-52). Specifically, "Ivana" from AAA would give Ahmed directions as to work (*id.* at 51-52). He further testified that Crew did not share any personnel or equipment with AAA at or around the date of the accident (*id* at 13).

Ahmed testified that "Ivana or somebody from AAA" directed Crew to install the Sidewalk Shed at the Premises (*id.* at 51-52). He further testified that Crew installed the

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

Page 10 of 46

[* 10]

Sidewalk Shed at the Premises in June of 2016 (*id.* at 15-16, 18-19). Ahmed could not recall if Crew installed the Sidewalk Shed pursuant to a written agreement with AAA, nor could he recall executing a written contract with AAA as to the installation of the Sidewalk Shed (*id.* at 16, 18). He further testified that Crew owned the material components of the Sidewalk Shed (*id.* at 18). In response to questioning, Ahmed testified that Crew performed work at the Premises "upon direction of TDX and AAA" (*id.* at 30).

At his deposition, Ahmed testified that Crew did not perform periodic inspections or maintenance work on the Sidewalk Shed (*id.* at 24, 26-27). Ahmed could not recall if AAA ever requested that Crew perform any maintenance on the Sidewalk Shed between 2016 and the date of the accident (*id.* at 30). He further testified that "Crew doesn't do maintenance unless and until it has been instructed or if there is any weather-related or any unsafe conditions, that's when we will rush the people to fix it" (*id.* at 30). During his deposition, Ahmed was shown six maintenance logs (the "Maintenance Logs") for the Sidewalk Shed dated between June 3 and August 7, 2017 (*id.* at 25-28). He testified that although his name was printed on the Maintenance Logs, neither the handwriting nor the signatures were his own (*id.* at 25-28). Ahmed was also shown contractor daily sign-in sheets for the Premises dated between May 1 and August 29, 2017 (*id.* at 28-29; 35-37). He testified that the "documents [were] forged" including his signatures (*id.* at 35-37). He further testified that he did not visit the Premises as often as indicated on the sign-in sheets (*id.* at 36-37).

Ahmed testified that on the date of the accident, Crew was dismantling the Sidewalk Shed (*id.* at 23-24, 38-40). He was not present at the worksite that day but was informed of the accident (*id.* at 40-41). Ahmed spoke to H. Singh about the accident. It was his understanding from the conversation that H. Singh had not witnessed the accident (*id.* at 42-43).

150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 11 of 46

[* 11]

### *Deposition Testimony of Enrique Galliano, employee of Crew*

Enrique Galliano appeared for a deposition on January 21, 2021 (NYSCEF Doc. No. 191). He testified that at the time of the accident he was a driver employed by Crew (Galliano tr. at 14). Galliano testified that Crew was working at the Premises on the date of the accident, dismantling the Sidewalk Shed (*id.* at 17, 21). He testified that when he arrived at the Premises, there were Crew employees already working there (*id.* at 38-40). He further testified that "Jose Guadalupe" was employed by Crew and that Guadalupe "might have been" present at the worksite on the date of the accident (*id.* at 43-44).

### *Deposition Testimony of Zaneta Blazeska, principal of AAA*

Zaneta Blazeska appeared for a deposition on June 9, 2021 (NYSCEF Doc. No. 144). She testified that at the time of the accident, she was a principle of AAA, a commercial contracting company (Blazeska tr. at 9, 11, 12). At her deposition, Blazeska was shown a copy of the Exterior Contract. She confirmed that AAA entered into the Exterior Contract with NYCHA (*id.* at 15-16). She testified that the only work that AAA ever performed for NYCHA at the Promises was the erection and dismantling of the Sidewalk Shed (*id.* at 17-18, 78-79). Blazeska testified that Ivana Ristova, another principal of AAA, was involved in the day-to-day administration of AAA's work on NYCHA projects (*id.* at 31-32). She testified that AAA subcontracts sidewalk rigging, shed, and scaffolding work to Crew (*id.* at 13). Blazeska further testified that Crew is located at the same address as AAA. Blazeska represented that she does not have any business interest in Crew (*id.* at 13). She further testified that Syed Ahmed, Crew's principal, was not a AAA employee, nor did he have any relationship with AAA other than as a subcontractor (*id* at 14).

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

Page 12 of 46

[* 12]

Blazeska testified that AAA hired Crew to assemble the Sidewalk Shed based upon an oral agreement (*id.* at 23, 73). AAA provided the metal framework for the Sidewalk Shed and Crew provided the wooden planks and panels (*id.* at 25, 82-83). No AAA employees were present at the Premises when Crew assembled the Sidewalk Shed (*id.* at 32). Blazeska further testified that AAA hired Crew to perform periodic inspections of the Sidewalk Shed that were to be performed "upon request of NYCHA" (*id.* at 23). NYCHA would call AAA with an inspection request and AAA would communicate with Crew to conduct the inspection (*id.* at 25-16). She testified that AAA did not perform periodic inspections of the Sidewalk Shed (*id.* at 24).

Blazeska testified that Crew's responsibility to inspect the Sidewalk Shed was based upon a verbal conversation between Ristova and Ahmed, however, she did not know if Ristova had such a conversation with Ahmed (*id.* at 87-89). She further testified that AAA had a "good relationship" with Crew, which included multiple work agreements and that "the scope of work was always the same and it was done always the same and they were expected to do the inspection and everything else that was coming with them" (*id.* at 89). Blazeska further testified that AAA and Crew had verbal agreements, whereby Crew was responsible for maintaining the Sidewalk Shed (*id.* at 93). Blazeska testified that AAA did not perform periodic inspections of the Sidewalk Shed (*id.* at 24). She did not know if AAA ever confirmed that Crew conducted any Sidewalk Shed inspections (*id.* at 54).

Blazeska testified that AAA also hired Crew to dismantle the Sidewalk Shed (*id.* at 72). Blazeska was shown a written contract between AAA and Crew (the "AAA/Crew Contract"). She testified that she personally negotiated the AAA/Crew Contract with Ahmed, which covered

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 13 of 46

Crew's dismantling of the Sidewalk Shed (*id.* at 19-23). No AAA employees were present at the Premises on the date of the accident when Crew dismantled the Sidewalk Shed (*id.* at 32).

***Deposition Testimony of Daniel Kochivski, project manager for AAA***

David Kochivski appeared for deposition on February 12, 2021 (NYSCEF Doc. No. 192). He testified that he was a project manager working for AAA at the time of the accident (Kochivski tr. at 12-13). As project manager, he oversaw construction projects for AAA (*id.* at 12-13). He reported to Blazeska (*id.* at 17). Kochivski testified that he had "general knowledge" that AAA was retained to do facade restoration work at the Premises (*id.* at 30). He did not oversee any work at the Premises (*id.* at 15), nor did he know Garcia or Guadalupe (*id.* at 58-59). He also did not know if AAA had a project manager who was responsible for the work at the Premises. Kochivski did not have direct knowledge as to TDX's involvement in the work at the Premises (*id.* at 36), nor did he know whether AAA or NYCHA was responsible for maintaining the Sidewalk Shed (*id.* at 43-45).

## DISCUSSION

***Plaintiff's motion to consolidate (motion sequence 004)***

As an initial matter, plaintiff moves to consolidate this action with a related action brought by plaintiff against AAA under Index No. 156150/2020 (the "Related Action"). "Where common questions of law or fact exist, a motion to consolidate or for a joint trial pursuant to CPLR 602(a) should be granted absent a showing of prejudice to a substantial right by the party opposing the motion. A trial court has broad discretion in determining whether to order consolidation." (*Hershfeld v JM Woodworth Risk Retention Group, Inc.*, 164 AD3d 1423, 1424 [2nd Dept 2018] [internal citations and quotation marks omitted]; *see also Scarola Zubatov Schaffzin PLLC v. Dynamic Credit Partners, LLC,* 210 AD3d 605, 607 [1st Dept 2022])

**150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

**Page 14 of 46**

[* 14]

Here, Plaintiff commenced the Related Action based upon the same factual allegations and accident as the underlying action. Accordingly, both actions involve common questions of law and fact. None of the parties oppose the consolation of the two actions. As such, the underlying action and the Related Action shall be consolidated under index number 150664/2018.

**Plaintiff's Labor Law § 240 (1) claims against NYCHA and AAA (motion sequence 004, 007)**

Plaintiff moves for summary judgment as to liability on his Labor Law § 240 (1) claims against NYCHA and AAA. NYCHA moves for summary judgment dismissing plaintiff's Labor Law § 240 (1) claims.

Labor Law § 240 (1), also known as the Scaffold Law reads as follows:

"Scaffolding and other devices for use of employees

"1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

"[T]he Labor Law imposes absolute liability on owners and general contractors for injuries that are proximately caused by the failure to provide appropriate safety devices to workers subject to gravity-related risks" (*Ladd v Thor 680 Madison Ave LLC*, 212 AD3d 107, 111 [1st Dept 2022]). To prevail on a Labor Law § 240 (1) claim, plaintiff must show that the statute was violated, and that this violation was a proximate cause of his injuries (*See Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003]). "[T]he single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 15 of 46

[* 15]

adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]).

Plaintiff argues that the accident occurred while he was working at an elevated height and that the accident was due to defendants' failure to provide him with appropriate safety devices. Specifically, plaintiff was working on the Sidewalk Shed, approximately thirteen feet high, when a wooden plank broke beneath him causing him to fall through the Sidewalk Shed. He further argues that NYCHA owned the Premises and AAA was the general contractor, and as such are proper Labor Law defendants.

NYCHA argues that plaintiff's Section 240 (1) claim should be dismissed because no construction work was being performed at the time of plaintiff's accident. Specifically, NYCHA argues that the only work that took place during plaintiff's accident was the dismantling of the Sidewalk Shed, which it claims does not fall within the scope of Section 240 (1).

NYCHA and AAA further argue that there is an issue of fact as to whether plaintiff was recalcitrant for failing to properly use the harness he was wearing at the time of the accident. Specifically, AAA argues that there is an insufficient basis to conclude that there was no place for plaintiff to tie his harness off. NYCHA also argues that plaintiff "did not attach his harness to anything and provided no explanation for not doing so" (NYCHA memorandum of law, p. 26, NYSCEF Doc. No. 246).

Initially, NYCHA and AAA, as owner and general contractor respectively, do not contest that they are proper Labor Law defendants.

Further, Section 240 (1) applies to dismantling and adjusting structures such as scaffolding and sidewalk sheds (*See Hyatt v. Queens W. Dev. Corp.*, 194 AD3d 548, 549 [1st Dept 2021] [affirming summary judgment on Labor Law § 240 (1) claim where plaintiff was

**150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No.  003 004 007 008**

Page 16 of 46

[* 16]

injured while breaking down scaffolding]; *Agurto v One Boerum Dev. Partners LLC*, 2022 NY Slip Op 32621(U) [Sup Ct, NY County 2022] [granting summary judgment on Labor Law § 240 (1) claim where plaintiff was injured while doing work relating to dismantling a sidewalk shed])

Here, there is no dispute that plaintiff was dismantling the Sidewalk Shed when a wooden plank broke beneath him, causing him to fall to the ground below. In addition, plaintiff testified that the Sidewalk Shed was approximately twelve to thirteen feet from the ground (Plaintiff's 50-h hearing tr at 43-44, 47). Therefore, plaintiff's accident "flow[ed] directly from the application of the force of gravity" upon him when he fell through the Sidewalk Shed (*Vitucci v Durst Pyramid LLC*, 205 AD3d 441, 442 [1st Dept 2022] quoting *Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 604 [1st Dept 2009])).

As such, plaintiff has met his prima facie burden on his Section 240 (1) claim as against NYCHA and AAA (*See Gutierrez v. Turner Towers Tenants Corp.*, 202 AD3d 437, 437 [1st Dept 2022] [plaintiff established prima facie violation of Labor Law § 240 (1) claim as he fell from a sidewalk bridge due to plank that broke when he stepped on it]; *Barraco v First Lenox Terrace Assoc*, 25 AD3d 427, 428[1st Dept 2006] [plaintiff established prima facie violation of Labor Law § 240 (1) as he fell when part of sidewalk bridge collapsed as he walked on it]; *see also Leveron v Prana Growth Fund I, L.P.*, 181 AD3d 449, 450 [1st Dept 2020] ["The collapse of the sidewalk shed is prima facie evidence of a violation of Labor Law § 240 (1)"]).

Further, NYCHA and AAA have failed to create issues of fact as to whether plaintiff was a recalcitrant worker by failing to use available safety equipment, thus, was the sole proximate cause of the accident. Recalcitrance "is not established merely by showing that the worker failed to comply with an employer's instruction to avoid using unsafe equipment or engaging in unsafe practices, or to use a particular safety device." (*Powers v Del Zotto & Son Bldrs.*, 266 AD2d 668,

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

Page 17 of 46

[* 17]

669 [3rd Dept 1999]). Rather, the defendant must show that plaintiff deliberately refused to obey a direct and immediate instruction to use an available safety device (*See Vitucci v. Durst Pyramid LLC*, 205 AD3d 441, 444 [1st Dept 2022], citing *Saavedra v 89 Park Ave. LLC*, 143 AD3d 615 [1st Dept 2016]; *see also Santo v Scro*, 43 AD3d 897, 898-899 [2d Dept 2007]). Here, although plaintiff testified at both the 50-h hearing and his deposition that his harness was not secured to anything at the time of the accident (Plaintiff's 50-h hearing tr at 34-35; Plaintiff tr. at 80), at no point was he ever questioned as to whether he was provided with a piece of safety equipment (e.g. an anchor point) to which he could secure his harness. Further, AAA has failed to establish any basis to conclude that plaintiff was provided with such safety equipment or that he was directed to attach his harness to any such equipment while dismantling the Sidewalk Shed. Notably, when counsel was pressed at oral argument to identify the location that plaintiff would have been expected to attach himself on the scaffolding, no such location could be identified (NYSCEF Doc. No. 329 at Tr. 15-16).

Therefore, as AAA and NYCHA have failed to raise a question of fact as to whether plaintiff was recalcitrant, plaintiff is entitled to summary judgment on liability against NYCHA and AAA as to his Labor Law § 240 (1) claims.

### *Plaintiff's Labor Law § 240 (1) claims as against TDX (motion sequence 003, 004)*

Plaintiff moves for summary judgment on his Labor Law § 240 (1) claims against TDX. TDX also moves for summary judgment seeking dismissal of all claims and crossclaims asserted against it.

Plaintiff argues that TDX was NYCHA's construction manager/general contractor for work done at the Premises and therefore a proper Labor Law defendant. TDX argues that plaintiff's Labor Law § 240 (1) claims should be dismissed as it was only a construction manager

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

Page 18 of 46

[* 18]

and not a statutory agent nor general contractor of NYCHA. Specifically, TDX argues that the NYCHA/TDX Contract did not authorize TDX to supervise, direct, or control the work that produced plaintiff's injuries, and in fact "specifically excluded that authority from TDX" (TDX memorandum of law p. 3, NYSCEF Doc. No. 121).

In opposition to TDX's motion, NYCHA argues that TDX has failed to establish that it was not NYCHA's statutory agent. Specifically, NYCHA argues that TDX was "functionally NYCHA's eyes, ears, and voice on this project" (NYCHA affirmation in partial opposition para. 13, NYSCEF Doc. No. 304). NYCHA further argues that TDX had a central role in the safety and inspections of the work at the Premises. NYCHA argues that TDX was required to oversee the contractor's adherence to a safety plan and that TDX was required to stop work if they observed an unsafe condition. NYCHA also argues that H. Patel testified that he routinely visited the Premises to inspect the Sidewalk Shed. AAA also opposes TDX's motion on the basis that there is an issue of fact as to whether TDX was NYCHA's statutory agent. AAA argues that the language of the NYCHA/TDX Contract is ambiguous as to whether TDX is NYCHA's statutory agent.

"Labor Law § 240(1) 'imposes upon owners, contractors and their agents a nondelegable duty that renders them liable regardless of whether they supervise or control the work'" (*Rosa v 47 E. 34th St. (NY), L.P.*, 208 AD3d 1075, 1080 [1st Dept 2022] quoting *Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [NY 2015])). Further, although a construction manager is generally not responsible for injuries under Labor Law § 240 (1), there are situations where such a party could control activities that brought about a plaintiff's injury (*Walls v Turner Constr. Co.*, 4 NY3d 861, 863-864 [2005]).

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 19 of 46

[* 19]

A construction manager may be found to be an owner's statutory agent based upon contracts that "impose not only the responsibility to coordinate the work but also a broad responsibility for overall job site safety, including the implementation of … measures to ensure worker safety" (*Lind v Tishman Constr. Corp. of N.Y.*, 180 AD3d 505, 505 [1st Dept 2020] [internal quotation marks and citation omitted]). However, a construction manager is not a statutory agent where the operative contract "did not confer upon the construction manager the right to exercise supervisory control over the individual contractors" (*DaSilva v Haks Engrs. Architects and Land Surveyors, P.C.*, 125 AD3d 480, 481 [1st Dept 2015]).

Initially, whether a contract specifically defines an entity as an "agent" is not dispositive of whether said entity is a statutory agent for the purposes of the Labor Law. As previously stated, a construction manager's contractual responsibilities and duties speak to whether they have the requisite supervisory control to be the owner's statutory agent. However, a contract may specifically define a parties' "agents" in accordance with the agreed upon contractual terms and for purposes unrelated to statutory agency (*see generally Ellington v EMI Music, Inc.*, 24 NY3d 239, 244 [2014]["Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole."]).

Here, the record establishes that TDX did not have the requisite supervisory authority under the NYCHA/TDX Contract to be NYCHA's statutory agent, nor did TDX exercise supervisory control over the work being performed at the Premises.

It is undisputed that AAA was the general contractor for the outside work being performed at the Premises and that AAA hired Crew as a subcontractor to erect and disassemble the Sidewalk Shed (Ahmed at 15-16, 18-19, 23-24, 38-40, 51-52; Blazeska tr. at 13, 23, 72, 73).

150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 20 of 46

[* 20]

There is nothing from the record to show that TDX assumed these responsibilities, nor does the NYCHA/TDX Contract place said responsibilities upon TDX (*Diaz v P&K Contracting, Inc.*, __ A.D.3d __, 2024 WL 367156 [Feb. 1, 2024]) ("TDX, the construction manager on this project, was not a statutory agent conferring liability under the Labor Law, as TDX did not have sufficient supervisory control over the work being performed when plaintiff was allegedly injured.").

In addition, the NYCHA/TDX Contract did not make TDX NYCHA's statutory agent as the contract did not confer upon TDX the authority to supervise and control the work being performed at the Premises, nor a broad responsibility for overall job site safety. Article 4 of the NYCHA/TDX Contract limited TDX's authority to supervise or control the work being done at the Premises. The NYCHA/TDX Contract specifically states that neither the NYCHA/TDX Contract nor TDX's rendition of services "shall be deemed [TDX's] assumption of responsibility for… construction means, methods, techniques, or sequences at the Site, all of which are and remain the responsibility of the Construction Contractor(s)" (NYCHA/TDX Contract p 6).

Further, the sections of the NYCHA/TDX Contract to which NYCHA refers are insufficient to create an issue of fact as to whether TDX was NYCHA's statutory agent as to the work that led to plaintiff's accident. The "Scope of Service" section of the NYCHA/TDX Contract indicates that "NYCHA requires the professional expertise of a Construction Manager … to act on behalf of, and as an agent for NYCHA for Pre-construction, Construction and Post-construction Phase Services" (NYCHA/TDX Contract p. 26). However, the following sections do not require that TDX supervise the work at the Premises, nor does it place a broad responsibility for overall job site safety upon TDX.

150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 21 of 46

[* 21]

In addition, the fact that TDX was required to "provide the site safety manager and oversee contractor's adherence to safety plan and requirements," (NYCHA/TDX Contract Addendum #1) is insufficient by itself to establish an issue of fact as to whether TDX was NYCHA's statutory agent (*see e.g. Gaspar v LC Main, LLC,* 27 Misc 3d 1212(A), 2010 NY Slip Op 50691(U) [Sup Ct, NY County], *affd* 79 AD3d 428 [1st Dept 2010]).

Further, there is nothing from the record to show that TDX supervised or exercised control over the work being done at the Premises. Plaintiff testified that Guadalupe and Garcia were in charge of his work. There is nothing to indicate that either Guadalupe or Garcia worked for TDX. Similarly, none of the deposed witnesses testified that TDX supervised or controlled plaintiff's work. H.A. Patel specifically testified that TDX was not doing "actual construction work" (Patel tr. at 89).

In response to questioning, Ahmed indicated that Crew performed work at the Premises "upon direction of TDX and AAA" (Ahmed tr. at 30). However, he does not elaborate as to this "direction" nor was he further questioned as to whether TDX supervised Crew's work. In the absence of any details or other supporting testimony, Ahmed's indication that Crew performed work "upon direction of TDX" is insufficient to establish an issue of fact as to whether TDX supervised or controlled the work being done at the Premises.

TDX has established that it was not NYCHA's statutory agent for the purposes of the Labor Law. Further, plaintiff, NYCHA, and AAA have failed to create an issue of fact in opposition.

Accordingly, TDX is entitled to summary judgment dismissing plaintiff's Labor Law §240 (1) claims as against it.

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

Page 22 of 46

[* 22]

***Plaintiff's Labor Law § 241 (6) claims (motion sequence 003, 004, 007)***

Plaintiff moves for summary judgment on his Labor Law § 241 (6) claims against NYCHA, AAA, and TDX. NYCHA and TDX both move for summary judgment dismissing plaintiff's Labor Law § 241 (6) claims in their favors, respectively.

As an initial matter, for the reasons previously stated, plaintiff's Labor Law § 241 (6) claims are also dismissed as against TDX, as TDX was not a statutory agent of NYCHA (*See DaSilva v Haks Engrs.*, 125 AD3d 480, 481 [1st Dept 2015]).

Next, NYCHA argues that the alleged statutory violations are insufficient to form a basis for a Labor Law § 241 (6) claim and/or are inapplicable to the alleged facts. Plaintiff argues that he is entitled to summary judgment on his Labor Law § 241 (6) claims based upon alleged violations of 12 NYCRR §§ 23-1.5(c)(3), 23-1.7(b)(1)(iii)(c), 23-1.11(a), 23-1.16(c), 23-1.18(b)(1), 23-5.1(g), and 23-5.1(h). As plaintiff does not oppose dismissal of his Labor Law § 241 (6) claims based upon any alleged violations, other than the ones listed above, said claims are dismissed as abandoned (*See Kempisty v. 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section."]).

As such, the only Labor Law § 241 (6) claims before the Court are those based upon the defendants' alleged violations of §§ 23-1.5(c)(3), 23-1.7(b)(1)(iii)(c), 23-1.11(a), 23-1.16(c), 23-1.18(b)(1), 23-5.1(g), and 23-5.1(h). "Labor Law § 241(6) imposes a non-delegable duty on owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Toussaint v Port Auth. of N.Y. & N.J.*, 38 NY3d 89, 93 [2022] [internal

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

**Page 23 of 46**

[* 23]

quotations marks and citations omitted]). The non-delegable duty is absolute and "imposes liability upon a general contractor for the negligence of a subcontractor, even in the absence of control or supervision of the worksite" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348-349 [1998], citing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 502 [1993] [emphasis omitted]). "To establish liability under Labor Law § 241 (6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code provision 'mandating compliance with concrete specifications'" (*Ennis v Noble Constr. Group, LLC*, 207 AD3d 703, 705 [2d Dept 2022], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 505).

*Industrial Code 12 NYCRR 23-1.5 (c) (3)*

Industrial Code 12 NYCRR 23-1.5 (c) (3) is sufficiently specific to form a basis for liability under Labor Law § 241(6) (*See Jackson v Hunter Roberts Constr. Group, LLC*, 161 AD3d 666, 667 [1st Dept 2018]) and reads as follows:

"General responsibility of employers

"(c) Condition of equipment and safeguards.

(3) All safety devices, safeguards and equipment in use shall be kept sound and operable, and shall be immediately repaired or restored or immediately removed from the job site if damaged."

Plaintiff argues that NYCHA and AAA violated this section as the Sidewalk Shed was neither sound nor operable. Specifically, plaintiff argues that AAA had an obligation to periodically inspect the Sidewalk Shed, but failed to do so. He further contends that under the NYCHA/TDX Contract, NYCHA was responsible for reporting defects and monitoring and enforcing contractor compliance. NYCHA and AAA both assert that plaintiff was recalcitrant for failing to use the provided safety equipment. As discussed previously, the defendants have failed to create an issue of fact as to whether plaintiff was recalcitrant. NYCHA further claims

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

Page 24 of 46

[* 24]

that this section is inapplicable as there is no evidence that plaintiff's harness nor any other safeguards and equipment were not kept in sound or operable condition. NYCHA also argues that the Sidewalk Shed functioned as intended as no pedestrians were harmed by falling objects from the building.

12 NYCRR 23-1.5 (c) (3) places an affirmative duty of inspection upon defendants to insure that all safety equipment is sound and operable (*See Viruet v Purvis Holdings LLC* (198 AD3d 587, 588 [1st Dept 2021]; *Lopez v City of New York,* 203 AD3d 405, 406 [1st Dept 2022] [affirming denial of defendant's motion for summary judgment because defendant "submitted no evidence that they conducted a safety inspection . . . before the accident"]). Here, plaintiff has established prima facie that NYCHA and AAA failed to conduct any inspections of the Sidewalk Shed prior to the accident. There is nothing from the record to indicate that NYCHA ever conducted any inspections of the Sidewalk Shed prior to the accident. In addition, Blazeska testified that AAA did not perform periodic inspections of the Sidewalk Shed (Blazeska tr. at 24). Further, NYCHA and AAA have failed to create an issue of fact as to whether they conducted any inspections of the Sidewalk Shed.

As such, plaintiff is entitled to summary judgment in his favor on his Labor Law § 241 (6) claim based upon a violation of Section 23-1.5 (c) (3) as against NYCHA and AAA, and NYCHA is not entitled to summary judgment dismissing the claim. NYCHA and AAA's remaining arguments on this issue have been considered and found unavailing.

*Industrial Code 12 NYCRR 23-1.7 (b) (1) (iii) (c)*

Industrial Code 12 NYCRR 23-1.7 (b) (1) (iii) (c) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241(6) (*See Clarke v Empire Gen. Contr. & Painting Corp.,* 189 AD3d 611, 611 [1st Dept 2020]) and reads as follows:

**150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

Page 25 of 46

"Protection from general hazards

"(b) Falling hazards.

(1) Hazardous openings.

(iii) Where employees are required to work close to the edge of such an opening, such employees shall be protected as follows:

(c) An approved safety belt with attached lifeline which is properly secured to a substantial fixed anchorage."

Plaintiff argues that NYCHA and AAA violated this section in that plaintiff did not receive instruction on attaching his harness to anything while he was on the job nor was there anything for him to attach his harness to.

NYCHA contends that it did not violate this section as plaintiff was provided with a harness which could be attached but he chose not to do so. Therefore, the accident was the result of plaintiff's own conduct and not due to any violation of 12 NYCRR 23-1.7 (b) (1) (iii) (c).

Section 23-1.7 (b) (1) "applies to safety devices for hazardous openings, and not to an elevated hazard" (*Forschner v Jucca Co.*, 63 AD3d 996, 999 [2nd Dept 2008] *see also Macaluso v London Terrace Towers Owners, Inc.*, 2017 NY Slip Op 31630(U) [Sup Ct, NY County 2017])

Here, plaintiff's accident occurred when he fell through the Sidewalk Shed when the wooden plank broke underneath him. Prior to the accident, there were no hazardous openings.

As such, NYCHA is entitled to summary judgment dismissing the claim, and plaintiff is not entitled to summary judgment as to the same.

*Industrial Code 12 NYCRR 23-1.11 (a)*

Industrial Code 12 NYCRR 23-1.11 (a) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241(6) (*See DePaul v NY Brush LLC*, 120 AD3d 1046, 1048 [1st Dept 2014]) and reads as follows:

150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 26 of 46

[*26]

"Lumber and nail fastenings

"(a) The lumber used in the construction of equipment or temporary structures required by this Part (rule) shall be sound and shall not contain any defects such as ring shakes, large or loose knots or other defects which may impair the strength of such lumber for the purpose for which it is to be used."

Plaintiff asserts that NYCHA and AAA violated this section as AAA built the Sidewalk Shed. He further argues that defendants failed to inspect the Sidewalk Shed, and that he fell from the Sidewalk Shed due to a deteriorated wooden plank.

NYCHA maintains that it did not violate this section as there was no indication that the wooden planks contained any defects such as ring shakes, large or loose knots.

Here, plaintiff has failed to meet his prima facie burden for summary judgment in his favor. Specifically, plaintiff has failed to establish as a matter of law that the accident occurred due to any defects in the wooden plank. Plaintiff testified that the wooden plank broke beneath him, however, there is an issue of fact as to whether the wooden plank broke due to a defect or if it deteriorated over time due to a failure to maintain.

Although plaintiff failed meet his prima face burden, his testimony that the wooden plank broke beneath him is sufficient to create an issue of fact in opposition to NYCHA's summary judgment motion to dismiss the claim (*see e.g. Edwards v Plaza Constr. Corp.*, 2013 NY Slip Op 32471(U) [Sup Ct, NY County 2013] [denying dismissal of the Labor Law § 241(6) based upon alleged violation of Section 23-1.11 (a) where plaintiff testified that the accident occurred when the plywood ramp cracked as she was walking across it.]).

As such, plaintiff is not entitled to summary judgment on the claim, nor is NYCHA entitled to summary judgment dismissing the same.

150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No.  003 004 007 008

Page 27 of 46

[* 27]

*Industrial Code 12 NYCRR 23-1.16 (c)*

Industrial Code 12 NYCRR 23-1.16 (c) is sufficiently specific to form a basis for liability

pursuant to Labor Law § 241(6) (*See Schutt v Bookhagen,* 186 AD3d 1027, 1029 [4th Dept

2020]) and reads as follows:

"Safety belts, harnesses, tail lines and lifelines

"(c) Instruction in use. Every employee who is provided with an approved safety
belt or harness shall be instructed prior to use in the proper method of wearing,
using and attaching such safety belt or harness to the lifeline."

Plaintiff contends that NYCHA and AAA violated this section as he did not receive any

instruction on attaching his harness to anything while he was at the jobsite.

NYCHA claims that it did not violate this section as plaintiff was told by Gonzales,

Manolo Scaffolding, and Guadalupe that he had to secure his harness.

As previously stated, there is nothing from the record to establish that plaintiff was

provided with an anchor point to which he could secure his harness. Therefore, there is no basis

to conclude that a failure to instruct plaintiff on the use of his harness was the proximate cause of

the accident.

As such, NYCHA is entitled to summary judgment dismissing the claim, and plaintiff is

not entitled to summary judgment as to the same.

*Industrial Code 12 NYCRR 23-1.18 (b) (1)*

Industrial Code 12 NYCRR 23-1.18 (b) (1) is sufficiently specific to form a basis for

liability pursuant to Labor Law § 241(6) (*see e.g. Quick v City of New York,* 24 Misc 3d

1210(A), 2009 NY Slip Op 51409(U) [Sup Ct, Kings County 2009]; *Debowski v City of New*

*York,* 3 Misc 3d 1109(A), 2004 NY Slip Op 50528(U) [Sup Ct, Kings County 2004]) and reads

in relevant part as follows:

**150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

**Page 28 of 46**

[* 28]

"Sidewalk sheds and barricades

"(b) Sidewalk shed construction.

1) The deck and supporting structure of every sidewalk shed shall be constructed to sustain a live load of at least 150 pounds per square foot without breaking..."

Plaintiff argues that NYCHA and AAA violated this section as plaintiff fell through the Sidewalk Shed when a wooden plank broke as he stepped on it.

NYCHA asserts that nothing was wrong with the construction of the Sidewalk Shed, but rather that wear and tear caused the Sidewalk Shed to deteriorate over time.

Here, plaintiff has failed to establish prima facie that the accident occurred due to a violation of 12 NYCRR 23-1.18 (b) (1). Specifically, plaintiff has not established that the Sidewalk Shed was unable to "sustain a live load of at least 150 pounds per square foot without breaking" (12 NYCRR 23-1.18 (b) (1)) or that any such inability was the proximate cause of the accident.

NYCHA has also failed to establish prima facie that the claim should be dismissed as it does not submit any proof to establish that the Sidewalk Shed met the requirements of 12 NYCRR 23-1.18 (b) (1) in the first instance (*see also Domanski v Sun Moon Ny LLC,* 2021 NY Slip Op 30677(U) **25 [Sup Ct Kings County 2021] ["In light of plaintiff's uncontroverted testimony that the sidewalk bridge's planking broke as he stood on it, the court finds that [defendants] have failed to eliminate all triable issues of fact as to whether [Section 23-1.18 (b) (1)] is applicable and whether a violation of it contributed to the plaintiff's accident."]).

Accordingly, neither plaintiff nor NYCHA is entitled to summary judgment on this claim.

150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 29 of 46

[* 29]

*Industrial Code 12 NYCRR 23-5.1(g)*

Industrial Code 12 NYCRR 23-5.1 (g) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241(6) (*see Batista v Manhattanville Coll.,* 138 AD3d 572, 572 [1st Dept 2016]) and reads as follows:

> "General provisions for all scaffolds
>
> "(g) Scaffold lumber. All lumber used in the construction of scaffolds and scaffold platforms shall be stress-grade, having a minimum unit stress "f" of 1500 psi. The use of scaffold lumber shall be in conformance with the grade classification, i.e. lumber graded for use as posts or columns shall not be used where beams or joists are required. All lumber subjected to stress shall be sound, straight grained, free from shakes, large, loose or dead knots or checks or from any other defects which may impair its strength or durability.

Sidewalk sheds fall within the scope of 12 NYCRR 23-5.1, with the specific subsections referring to specific elements of a sidewalk shed (*See e.g. Polonia v. 14 Sutton Tenants Corp.,* 210 AD3d 417, 418 [1st Dept 2022]). Plaintiff contends that NYCHA and AAA violated section g as the wooden plank broke when plaintiff stepped upon it and as such was neither sound nor free from defect. NYCHA argues that the claims should be dismissed as the Sidewalk Shed was not a scaffold and there is no evidence that the lumber used in the Sidewalk Shed did not meet the qualifications in the code.

NYCHA has also failed to establish prima facie that the claim should be dismissed as it has not submitted any proof to establish that the Sidewalk Shed met the requirements of Section 23-5.1 (g). Nonetheless, plaintiff is also not entitled to summary judgment because he has failed to establish prima facie that the accident occurred due to a violation of 12 NYCRR 23-5.1 (g). Specifically, plaintiff has not established that the Sidewalk Shed was not built to the specifications required by the section.

**150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No.  003 004 007 008**

Page 30 of 46

[* 30]

Accordingly, neither plaintiff nor NYCHA is entitled to summary judgment on this claim.

*Industrial Code 12 NYCRR 23-5.1(h)*

Industrial Code 12 NYCRR 23-5.1 (h) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241(6) (*see Batista,* 138 AD3d at 572) and reads as follows:

"General provisions for all scaffolds

"(h) Scaffold erection and removal. Every scaffold shall be erected and removed under the supervision of a designated person."

12 NYCRR 23-5.1 (h) required that the Sidewalk Shed be disassembled under the supervision of a "designated person," which is defined as "[a] person selected and directed by an employer or his authorized agent to perform a specific task or duty" (12 NYCRR 23-1.4 (b) (17)).

Plaintiff argues that NYCHA violated 12 NYCRR 23-5.1 (h), which requires that '[e]very scaffold shall be erected and removed under the supervision of a designated person." Plaintiff asserts that no one from NYCHA nor TDX was present on the site while the Sidewalk Shed was being dismantled. He further claims that AAA did not have anyone present at the worksite from the date that the Sidewalk Shed was erected to the date it was removed. NYCHA maintains that plaintiff received instructions from "Guadalupe" at the time of the accident and as such, this provisions is inapplicable. Here, there is an issue of fact as to whether the dismantling was supervised by a "designated person." Plaintiff testified at his 50-h hearing that Guadalupe and Adolfo Garcia were "in charge" of the work at the Premises and that they were both employees of AAA (Plaintiff's 50-h hearing tr. at 28-30). However, plaintiff testified at his deposition that he did not know who Guadalupe or Garcia worked for, or even what company plaintiff himself was working for (Plaintiff tr. at 36-37, 5255, 89, 254).

150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No.  003 004 007 008

Page 31 of 46

[* 31]

Neither Ahmed nor Blazeska referred to Guadalupe or Garcia in their respective depositions. Kochivski testified that he did not know Garcia or Guadalupe (Kochivski tr. at 58-59). Galliano testified that Guadalupe was employed by Crew but was unsure as to whether Guadalupe was present at the worksite on the date of the accident (Galliano tr. at 43-44). Further, Galliano did not testify as to Guadalupe's role at the worksite. Similarly, although H. Patel testified that Guadalupe was at the worksite and informed him of the accident (H. Patel tr. at 109-110), H. Patel did not testify as to Guadalupe's role nor who he was working for at the time of the accident. As such, there is an issue of fact as to whether the Sidewalk Shed was dismantled under the supervision of a designated person.

Accordingly, neither plaintiff nor NYCHA is entitled to summary judgment on this claim.

### Plaintiff's Labor Law § 200 and common law negligence claims (motion sequence 003, 004, 007)

Plaintiff moves for summary judgment on his Labor Law § 200 and common law negligence claims against NYCHA, TDX, and AAA. NYCHA and TDX move for summary judgment dismissing plaintiff's claims.

Labor Law § 200 (1) states, in pertinent part, as follows:

"All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons."

"Under Labor Law § 200, which codifies an owner's or general contractor's common-law duties of care, there are 'two broad categories' of personal injury claims: 'those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed.'"

150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 32 of 46

[* 32]

(*Rosa v 47 E. 34th St. (NY), L.P.*, 208 AD3d 1075, 1081 [1st Dept 2022], quoting *Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 144 [1st Dept 2012]).

Neither common law negligence nor Labor Law § 200 makes an owner or contractor vicariously liable for the negligence of a downstream subcontractor (*See DeMaria v RBNB 20 Owner, LLC*, 129 AD3d 623, 625 [1st Dept 2015], citing *Burkoski v Structure Tone, Inc.*, 40 AD3d 378, 381 [1st Dept 2007]).

> "Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it. Where the injury was caused by the manner and means [means and methods] of the work, including the equipment used, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work."

(*Cappabianca* at 144 [internal citations omitted]; *see also Toussaint v Port Auth. of N.Y. & NY*, 38 NY3d at 94 [to recover under Labor Law § 200 "a plaintiff must show that an owner or general contractor exercised some supervisory control over the operation"]).

Further, "the mere fact that [a party] had the authority to stop unsafe work does not show that it had the requisite degree of control and actually exercised that control" (*See Galvez v Columbus 95th St. LLC*, 161 AD3d 530, 531-532 [1st Dept 2018], citing *Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc.*, 104 AD3d 446, 449 [1st Dept 2013]).

Plaintiff argues that AAA controlled the means and methods of Plaintiff's work on the Sidewalk Shed. He further asserts that NYCHA, TDX and AAA all "had at least constructive notice" of the dangerous condition of the Sidewalk Shed (Plaintiff's memorandum of law p. 17, NYSCEF Doc. No. 158).

TDX claims that it did not have actual or constructive knowledge of any dangerous conditions in the Sidewalk Shed, nor did it exercise any supervisory control over plaintiff's

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No.  003 004 007 008

Page 33 of 46

work. Specifically, TDX contends that it relied upon the Maintenance Logs that it received from AAA, all of which indicated that the Sidewalk Shed was in good condition. TDX further maintains that it did not exercise any supervisory control over the work plaintiff was performing on the date of the accident.

NYCHA argues that it did not have actual or constructive knowledge of any dangerous conditions in the Sidewalk Shed, nor did it exercise any supervisory control over plaintiff's work. Specifically, NYCHA asserts that there were no NYCHA employees supervising the work being done at the Premises and that NYCHA hired TDX as a construction manager, "who was responsible for coordinating the field activity and providing daily reports" (NYCHA's memorandum of law p. 30).

AAA also claims that it did not have actual or constructive knowledge of any dangerous condition in the Sidewalk Shed, nor did it exercise any supervisory control over plaintiff's work.

Here, the conditions that gave rise to plaintiff's accident potentially stemmed from one or all of the three different stages of work relating to the Sidewalk Shed: the installation of the Sidewalk Shed, the maintenance of the Sidewalk Shed, and/or the dismantling of the Sidewalk Shed. In addition, depending upon the stage of work, plaintiff's accident may have arisen from an inherently defective condition and/or the means and methods of the work that gave rise to plaintiff's accident.

It is undisputed that plaintiff's accident occurred due to a wooden plank that broke when he stepped upon it and that the accident occurred while plaintiff was working to dismantle the Sidewalk Shed. However, the broken plank could have been the result of how the Sidewalk Shed was installed, how it was maintained, how it was dismantled, or some combination of all of these. Specifically, there is nothing in the submitted evidence to establish that the broken plank

150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 34 of 46

[* 34]

arose solely due to the way the Sidewalk Shed was installed, the way it was maintained, or the way it was dismantled to the exclusion of the other stages of work.

As such, the Court must consider NYCHA, TDX, and AAA's involvement in each of these three stages of the work relating to the Sidewalk Shed in order to evaluate plaintiff's Labor Law § 200 and common law negligence claims.

### The installation of the Sidewalk Shed

Assuming that the conditions of plaintiff's accident arose from the installation of the Sidewalk Shed, the accident was caused by the means and methods of the work.

There is nothing from the submitted evidence to suggest that NYCHA, TDX, or AAA actually exercised supervisory control over the installation of the Sidewalk Shed. Ahmed and Blazeska both testified that AAA hired Crew to install the Sidewalk Shed at the Premises (Ahmed tr. at 51-52; Blazeska tr. at 23, 73). There was nothing in their testimonies to suggest that representative of NYCHA or TDX were present at the Premises when the Sidewalk Shed was installed or that NYCHA or TDX exercised any supervision over the installation. In addition, neither Ahmed nor Blazeska's testimonies suggested that AAA exercised any supervisory role over the installation of the Sidewalk Shed.

### The maintenance of the Sidewalk Shed

Assuming that the conditions of plaintiff's accident arose from the maintenance of the Sidewalk Shed, the accident may have been caused by either an inherent defect or the means and methods of the work (*See Galeno v. Everest Scaffolding, Inc.*, 202 AD3d 433 [1st Dept 2022][applying both inherent defect and means and methods analysis to Labor Law §200 and common law negligence claims based upon plaintiff falling through a sidewalk shed]).

**150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No.  003 004 007 008**

**Page 35 of 46**

[* 35]

Specifically, the damaged wooden plank was both a defective condition in the Sidewalk Shed and/or overlooked due to the means and methods of how the Sidewalk Shed was maintained.

Addressing plaintiff claims against TDX, there is no basis to conclude that TDX is liable pursuant to Labor Law § 200 or common law negligence. TDX did not have actual nor constructive knowledge that any part of the Sidewalk Shed was defective. Specifically, TDX relied upon the Maintenance Logs that it received from AAA, all of which indicated that the Sidewalk Shed was in good condition. Although Ahmed's testimony creates an issue of fact as to the authenticity of the Maintenance Logs, the fact remains that they all indicated that the Sidewalk Shed was in good condition. There is nothing from the submitted evidence to suggest any reason why TDX should have doubted the validity of the Maintenance Logs, nor any basis to conclude that TDX would have constructive or actual knowledge of any defects in the Sidewalk Shed.

Further, there is no basis to conclude that TDX had any control over the means and methods of how the Sidewalk Shed was maintained prior to plaintiff's accident. Neither Ahmed nor Blazeska testified that TDX had anything to do with the maintenance of the Sidewalk Shed, nor was there any submitted evidence to establish that TDX exercised any control over the maintenance of the Sidewalk Shed.

As to plaintiff's claims against NYCHA, there is no basis to conclude that NYCHA had actual or constructive knowledge of any defects in the Sidewalk Shed. As previously stated, there is nothing from the record to establish that plaintiff or any other person made NYCHA aware that the wooden plank on the Sidewalk Shed was defective. Further, although H.A. Patel testified that NYCHA CSQ conducts sporadic inspections of NYCHA projects (Patel tr. at 44,

150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 36 of 46

[* 36]

65-66), there is nothing from the record to establish that NYCHA CSQ actually conducted an inspection of the Premises and/or Sidewalk Shed.

Similarly, there is nothing in the record to suggest that NYCHA exercised any supervisory control over the maintenance of the Sidewalk Shed such that it would be liable under the means and methods analysis.

Addressing plaintiff's claims against AAA, there are significant issues of fact as to whether AAA exercised control over the means and methods of how the Sidewalk Shed was maintained. Specifically, there is conflicting testimony and evidence as to whether Crew or AAA were tasked with maintaining the Sidewalk Shed prior to plaintiff's accident. Ahmed testified that Crew did not perform any periodic inspections or maintenance work on the Sidewalk Shed, and could not recall if AAA ever requested that Crew perform maintenance on the Sidewalk Shed (Ahmed tr. at 24, 26-27, 30). However, Blazeska testified that AAA hired Crew to perform periodic inspections of the Sidewalk Shed (Blazeska tr. at 23).

There are also issues of fact as to whether AAA prepared the Maintenance Logs. Ahmed testified that although the Maintenance Logs bore his name, he did not prepare them and the signatures therein were not his own (Ahmed tr. at 25-28). In addition, Leu states in his affidavit that AAA submitted the Maintenance Logs to TDX.

Taken together, the conflicting testimonies as to the maintenance of the Sidewalk Shed and the issues as to the source and authenticity of the Maintenance Logs create significant issues of fact as to whether AAA exercised control over the means and methods of how the Sidewalk Shed was maintained prior to the accident.

The issues as to the source and authenticity of the Maintenance Logs also create an issue of fact as to whether AAA had actual or constructive knowledge of any defects in the Sidewalk

150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 37 of 46

[* 37]

Shed. As it is unclear whether AAA conducted any inspections of the Sidewalk Shed and/or prepared the Maintenance Logs, there is an issue of fact as to whether AAA had actual or constructive notice of any defects in the Sidewalk Shed.

*The dismantling of the Sidewalk Shed (the date of the accident)*

Assuming that the conditions of plaintiff's accident arose from the dismantling of the Sidewalk Shed, the accident may have been caused by either an inherent defect or the means and methods of the work.

For the reasons already stated, there are issues of fact as to whether AAA had actual or constructive notice of any defects in the Sidewalk Shed that were present on the date of the accident.

There are also issues of fact as to whether AAA exercised control over the means and methods of plaintiff's work conducted on the date of the accident. Specifically, there is conflicting testimony as to whether Guadalupe and Garcia were working for AAA or Crew on the date of the accident. Plaintiff testified that Guadalupe and Garcia were in charge of his work on the date of the accident and that they both worked for AAA (Plaintiff's 50-h hearing tr at 28-30). However, plaintiff testified at his deposition that he did not know who Guadalupe or Garcia were working for (Plaintiff's tr. at 55, 89). Galliano, an employee of Crew, testified that Guadalupe was a Crew employee and that Guadalupe "might have been" present at the worksite on the date of the accident (Galliano tr. at 43-44). Kochivski, an AAA employee, testified that he did not know Guadalupe or Garcia (Kochivski tr. at 58-59). Neither Ahmed nor Blazeska referred to Guadalupe or Garcia in their respective depositions. Further, the parties have not submitted any documentary evidence as to Guadalupe or Garcia's employment statuses at the time of the accident.

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

**Page 38 of 46**

[* 38]

It is undisputed that Guadalupe and Garcia were in charge of plaintiff's work on the date of the accident. However, there is an issue of fact as to the entity Guadalupe and Garcia were working for on the date of the accident. As such, there is an issue of fact as to whether AAA exercised the requisite control over the means and methods of plaintiff's work on the date of the accident so as to be liable under Labor Law § 200 and/or common law negligence.

Further, there is nothing from the record to show that TDX and/or NYHCA supervised or exercised control over the work being done on the date of the accident. Plaintiff did not testify at his 50-h hearing nor at his deposition that either TDX or NYCHA supervised his work. Similarly, none of the deposed witnesses testified that TDX or NYCHA supervised or controlled plaintiff's work.

As such, NYCHA and TDX are entitled to summary judgment dismissing plaintiff's Labor Law § 200 and common law negligence claims as against them. However, there are issues of fact sufficient to deny plaintiff summary judgment in its favor on these claims as against AAA.

### NYCHA's contractual indemnification claims against TDX (motion sequence 004, 007)

TDX moves for summary judgment dismissing NYCHA's contractual indemnification claims as against TDX, and NYCHA conversely moves for summary judgment on its contractual indemnification claims as against TDX.

"A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018] quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]). "A contractual provision imposing a

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

**Page 39 of 46**

[* 39]

duty to indemnify 'must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed'" (*Lombardo v Tag Ct. Sq., LLC*, 126 AD3d 949, 950 [2nd Dept 2015] quoting *Hooper Associates, Ltd v AGS Computers, Inc.*, 74 NY2d 487, 491 [1989]). Summary judgment on a contractual indemnification claim is warranted where the intent to indemnify is clear and there is no basis to conclude that the indemnified party was negligent as to the underlying accident. "[A] party seeking contractual indemnification must prove itself free from negligence, because to the extent its negligence contributed to the accident, it cannot be indemnified therefor" (*De Souza v Empire Tr. Mix, Inc.*, 155 AD3d 605, 606 [2nd Dept 2017] [internal quotation marks and citation omitted]; *see e.g. Hong-Bao Ren v Gioia St. Marks, LLC*, 163 AD3d 494, 494 [1st Dept 2018]).

NYCHA argues that it is entitled to contractual indemnification from TDX based upon the NYCHA/TDX Contract which includes an indemnification provision in Section K of Appendix 3 (NYSCHA General Terms and Conditions) that reads in relevant part as follows:

> "The Consultant agrees to defend, indemnify and hold harmless NYCHA, Its Members, officers, employees, agents and representative, and any other party or entity acting on behalf of behalf of NYCHA, from and against any and all liabilities, claims, losses, damages, costs, fees and expenses… relating to (a) any alleged or actual personal injury, bodily injury (including death) or property damage… arising out of or resulting from any work or Services provided by the Consultant or its employees, agents, subconsultants or subcontractors in conjunction with the Agreement, or arising out of any other act, error or omission of the Consultant or its employees, agents, subconsultants or subcontractors…"

(NYSCEF Doc. No. 45). By its terms, indemnification is limited to claims "arising out of or resulting from any work or [s]ervices provided by" TDX.

Upon review of the NYCHA/TDX Contract, TDX's responsibilities did not encompass the work that gave rise to plaintiff's accident. TDX's responsibilities did not include supervising

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No.  003 004 007 008

Page 40 of 46

[* 40]

the work specifically relating to the installation, maintenance, and/or disassembly of the Sidewalk Shed (NYCHA/TDX Contract, RFP Dated July 9, 2012, Section I: Scope), nor did TDX supervise or engage in this work. As such, the NYCHA/TDX Contract's indemnification provision was not triggered and TDX "was not liable for plaintiff's accident, as it had no connection to plaintiff's work" (*See Naupari v Murray*, 163 AD3d 401, 402 [1st Dept 2018]).

Accordingly, TDX is entitled to summary judgment dismissing NYCHA's contractual indemnification claim, and NYCHA is not entitled to summary judgment as to the same.

### *NYCHA's common law indemnification and contribution claims against TDX (motion sequence 004, 007)*

TDX moves for summary judgment dismissing NYCHA's common law indemnification and contribution claims as against TDX, and NYCHA moves for summary judgment in its favor on the same claims as against TDX.

"To be entitled to common-law indemnification, a party must show (1) that it has been held vicariously liable without proof of any negligence or actual supervision on its part; and (2) that the proposed indemnitor was either negligent or exercised actual supervision or control over the injury-producing work" (*Naughton v City of New York*, 94 AD3d 1, 10 [1st Dept 2012], citing *McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 377-378 [2011]; *Reilly v Digiacomo & Son*, 261 AD2d 318 [1st Dept 1999]). "Thus, a party moving for summary judgment dismissing a common-law indemnification claim can meet its prima facie burden by establishing that the plaintiff's accident was not due to its own negligence" (*Cando v Ajay Gen. Contr. Co. Inc.*, 200 AD3d 750, 752 [2nd Dept 2021] [citations omitted]). As previously stated, TDX did not exercise supervision or control over the injury producing work or have any notice of a hazardous

150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING
Motion No. 003 004 007 008

Page 41 of 46

[* 41]

condition. Therefore, it was not negligent with respect to plaintiff's accident, which mandates dismissal of a claim for common law indemnification.

Accordingly, TDX is entitled to summary judgment dismissing NYCHA's common-law indemnification and contribution claims, and NYCHA is not entitled to summary judgment as to these claims.

### *NYCHA's contractual indemnification and breach of contract for failure to obtain insurance claims against AAA (motion sequence 007)*

NYCHA moves for summary judgment on its contractual indemnification claims against AAA. Specifically, NYCHA argues that it is entitled to contractual indemnification from AAA based upon the terms of the Exterior Contract. AAA does not oppose NYCHA's motion, which is granted.

### *NYCHA's common law indemnification claims against AAA (motion sequence 007)*

NYCHA moves for summary judgment on its common law indemnification claims against AAA. This issue is academic given the finding that NYCHA is entitled to contractual indemnification.

### *TDX's contractual indemnification claims against AAA (motion sequence 003)*

TDX moves for summary judgment on its contractual indemnification claim against AAA[2]. The indemnification provision in AAA's contract with NYACHA requires that entity to indemnify and hold harmless NYCHA and its agent (NYSCEF Doc. No. 40). The language of the indemnification provision is located at Art III of the Supplemental Provisions, and states:

> if any person sustains injury or death, or loss or damage to property occurs,
> resulting directly or indirectly from the Work of the Contractor, or its

---

[2] For the reasons previously stated, TDX is entitled to summary judgment dismissing the complaint as against it. However, TDX's contractual indemnification claim against AAA is not rendered academic as said claim may speak to defense costs and litigation fees incurred by TDX (*see e.g. Alvarao v Rower,* 2020 NY Misc LEXIS 676, 2020 NY Slip Op 30428(U) [Sup Ct, Kings County 2020])

**150664/2018  FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No.  003 004 007 008**

**Page 42 of 46**

subcontractors, <u>in the performance of this Contract, or from the Contractor's failure to comply with any of the provisions of this Contract or of law</u>, or for any other reason whatsoever, <u>the Contractor, to the fullest extent permitted by applicable law, shall indemnify and hold the Authority and</u> its members, officers, <u>agents</u> and employees harmless from any and at claims and judgments for damages and from costs and expenses to which the Authority or its members, officers, agents and employees may be subjected or which it may suffer or incur by reason thereof

AAA was aware that TDX was a contractual agent of NYCHA (in contrast to a statutory agent under the Labor Law) as it added TDX as an additional insured on its insurance policy. As the accident in this action is covered by the contractual indemnity provision AAA has with NYCHA, TDX (as NYCHA's agent) is entitled to contractual indemnification.

Accordingly, TDX has established that it is entitled to summary judgment on its contractual indemnification claim against AAA.

### TDX's common law indemnification claims against NYCHA (motion sequence 007)

NYCHA moves for summary judgment dismissing TDX's common law indemnification claims. There is no evidence that NYCHA was negligent in this matter. Further, as plaintiff's action has been dismissed in its entirely as against TDX, TDX's claims for common-law indemnification are also dismissed (*See Ghodbane v. 111 John Realty Corp.*, 210 AD3d 498, 499 [1st Dept 2022][where the primary action is dismissed against defendant, said defendant's common-law indemnification claims must also be dismissed in their entirety as defendant cannot recover attorneys' fees in common-law indemnification.])

Accordingly, NYCHA is entitled to summary judgment dismissing TDX's common law indemnification claim as against NYCHA.

### Crew's motion for summary judgment dismissing all claims and crossclaims (motion 008)

Crew moves for summary judgment dismissing all claims and crossclaims pursuant an application of Workers Compensation Law, which provides that an employer's liability "shall be

**150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No.  003 004 007 008**

**Page 43 of 46**

[* 43]

exclusive and in place of any other liability whatsoever, to such employee" (Workers' Compensation Law § 11). Plaintiff has not opposed Crew's motion, and NYCHA has submitted in partial opposition opposing dismissal of its crossclaims and fourth third-party action against Crew. NYCHA's partial opposition is based upon Crew's failure to properly articulate a legal basis for the dismissal of these claims. Having considered the parties' respective positions, the motion is granted to the extent of dismissing all claims, cross-claims, and third-party claims except for the those asserted by NYCHA.

### *NYCHA's common law indemnification claims against Crew (motion sequence 007)*

NYCHA moves for summary judgment on its common law indemnification claims against Crew. As noted above, there is no evidence that NYCHA was negligent with respect to plaintiff's accident. However, there are issues of fact as to whether Crew was negligent as to plaintiff's accident or exercised actual supervision or control over plaintiff's work (*Naughton,* 94 AD3d 1, 10). For instance, a factual issue exists regarding the entity that was supervising plaintiff on the date of the accident (*i.e.* who were Guadalupe and/or Garcia working for on the date of the accident). Also remaining unresolved is a determination as to whether Crew or AAA were responsible for the inspection of the Sidewalk Shed, which speaks to the question of their respective negligence. As such, NYCHA has failed to establish that it is entitled to summary judgment in its favor on its common law indemnification claim against Crew.

### *Crew's contractual indemnification and breach of contract for failure to obtain insurance claims against NYCHA (motion sequence 007)*

NYCHA moves for summary judgment dismissing Crew's contractual indemnification and breach of contract for failure to obtain insurance claims. No one opposes this branch of NYCHA's motion. There was no contract between NYCHA and Crew. Further, Crew does not argue that it is entitled to indemnification as a third-party beneficiary to any contract involving

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

**Page 44 of 46**

[* 44]

NYCHA. As such, there is no basis for Crew's contractual indemnification claims against NYCHA (*See Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018]; *Edge Mgt. Consulting, Inc. v Blank*, 25 AD3d 364, 368 [1st Dept 2006]). Similarly, there is no basis for Crew's breach of contract for failure to obtain insurance claim against NYCHA (*See Innovative Risk Mgt., Inc.,* 204 AD3d at 519). As such, NYCHA is entitled to summary judgment dismissing Crew's contractual indemnification and breach of contract for failure to obtain insurance claims as against NYCHA.

### *Crew's common law indemnification claims against NYCHA (motion sequence 007)*

NYCHA moves for summary judgment dismissing Crew's common law indemnification claims. As previously stated, NYCHA was not negligent as to plaintiff's accident nor did it supervise or control plaintiff's work (*See Naughton*, 94 AD3d at 11). As such, NYCHA is entitled to summary judgment dismissing Crew's common law indemnification claims as against NYCHA.

### *AAA's common law indemnification claims against NYCHA (motion sequence 007)*

NYCHA moves for summary judgment dismissing AAA's common law indemnification claims. As previously stated, NYCHA was not negligent as to plaintiff's accident nor did it supervise or control plaintiff's work (*See Naughton*, 94 AD3d at 11). As such, NYCHA is entitled to summary judgment dismissing AAA's common law indemnification claims as against NYCHA.

### *Contribution claims as against NYCHA (motion sequence 007)*

NYCHA moves for summary judgment dismissing all contribution claims against it. For the reasons previously stated, NYCHA was not negligent as to the plaintiff's

**150664/2018 FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No. 003 004 007 008**

**Page 45 of 46**

[* 45]

accident. As such, NYCHA is entitled to summary judgment dismissing all contribution claims against it (*See Cando*, 200 AD3d at 753; *see also Padron*, 209 AD3d at 537)

Settle order on notice.

**2/16/2024**
**DATE**

James d'Auguste, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | X | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150664/2018   FARFAN GONZALES, TOMAS vs. NEW YORK CITY HOUSING**
**Motion No.  003 004 007 008**

Page 46 of 46

[* 46]